2014-1846

IN THE

# United States Court of Appeals for the Federal Circuit

HEDWIG LISMONT

Plaintiff-Appellant,

- v -

ALEXANDER BINZEL CORPORATION, ALEXANDER BINZEL SCHQEISSTECHNIK GMBH & CO. KG, IBG INDUSTRIE-BETEILIGUNGS GMBH CO. KG, AND RICHARD SATTLER

Defendant-Appellee.

Appeal from the United States District Court for the Eastern District of Virginia in Case No. 12-CV-0592, Judge Mark S. Davis

## APPELLANT HEDWIG LISMONT'S PETITION FOR PANEL REHEARING

Frank P. Porcelli
Fish & Richardson P.C.
One Marina Drive
Boston, Massachusetts 02210-1878
Telephone (617) 542-5070
E-mail: porcelli@fr.com

*Attorneys for Plaintiff-Appellant Hedwig Lismont*
March 14, 2016

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel of record for Plaintiff-Appellant Hedwig Lismont certify as follows:

(1)    The full name of every party or amicus represented by us is:

Hedwig Lismont

(2)    The name of the real party in interest represented by us is:

Hedwig Lismont

(3)    The parent corporation or publicly held companies that own 10 percent or more of the stock of the parities or amicus curiae represented by me is None.

(4)    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by us in the trial court or agency or are expected to appear in this court are:

Frank Porcelli
Fish & Richardson P.C.
One Marina Park Drive
Boston, MA
Telephone: (617) 542-5070

Jeremy Mindlin Jay
Stephanie Marie Lawley
Elizabeth Mary Crompton
Leydig Voit & Mayer
700 13th Street NW, Suite 300
Washington, D.C. 20005
Telephone: (202) 737-6770

Brett Alan Hesterberg
Heinz Michael Hartmann
Paul John Korniczky
Leydig Voit & Mayer Ltd.
Two Prudential Plaza Suite 4900
Chicago, IL 60601
Telephone: (312) 616-5600

Date:  March 14, 2016                          /s/ Frank P. Porcelli

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST..................................................................................i

The Points of Law or Fact Overlooked or Misapprehended by the Court ............1

Factual Background....................................................................................................3

Argument....................................................................................................................4

    I.    The Panel Erred in Holding that the Second German
        Complaint Did Not Contain the Requisite Notice to Binzel-
        Germany that the U.S. patent would be litigated in the U.S.
        upon the conclusion of the foreign proceedings ...................................4

        A.    The Panel Overlooked or Misapprehended the Facts in
            the Second German Complaint that constituted a
            notice of incorrect inventorship of the U.S. patent...................4

        B.    The Panel Overlooked or Misapprehended the Legal
            Significance of the Charge of Incorrect Inventorship of
            the U.S. Patent as Establishing in Binzel-Germany a
            Reasonable Apprehension that Lismont would bring a
            §256 Action regarding the U.S. patent at the
            Conclusion of the Proceedings Regarding the German
            Patent ...........................................................................................8

        C.    Lismont's Right to Make Supporting Arguments In
            Response to the Panel's Manifest Factual Errors which
            Lead the Panel to a Clearly Erroneous Legal
            Conclusion...................................................................................12

        D.    Lismont Seeks Equity and Fairness...........................................14

Conclusion and Statement of Relief Sought ..............................................15

Addendum..................................................................................................17

Certificate Of Service And Filing..............................................................32

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.,*
  960 F.2d 1020 (Fed.Cir.1992) (*en banc*) ..........................................................................11

*Caraco Pharm. Labs., Ltd. v. Forest Labs., Ltd.,*
  527 F.3d 1278 (Fed.Cir.2008) .......................................................................................9

*Cardinal Chem. Co. v. Morton International,*
  508 U.S. 83 (1993) ......................................................................................................14

*Clair v. Kastar, Inc.,*
  148 F.2d 644 (2nd Cir. 1945) .......................................................................................15

*Fina Oil & Chemical Co. v. Ewen,*
  123 F.3d 1466 (Fed.Cir. 1997) ................................................................................ 8, 14

*Highmark, Inc. v. Allcare Health Management Systems, Inc.,*
  687 F.3d 1300 (Fed. Cir. 2012) ...................................................................................13

*Interactive Gift Express, Inc. v. Compuserve Inc.,*
  256 F.3d 1323 (Fed. Cir. 2001) ...................................................................................13

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007) ......................................................................................................9

*Vanguard Research, Inc. v. PEAT, Inc.,*
  304 F.3d 1249 (Fed. Cir. 2002) ...................................................................................12

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA,*
  944 F.2d 870 (Fed.Cir. 1991) ................................................................................. 8, 11

*Yee v. City of Escondido,*
  503 U.S. 519 (1992) .....................................................................................................13

## Statutes

35 U.S.C. §256.......................................................................................................*passim*

**Other Authorities**

Federal Circuit Rule 40 ........................................................................................1

Federal Rule of Appellate Procedure 40 ...............................................................1

Hedwig Lismont ("Lismont"), appellant in this court, by undersigned counsel and pursuant to Federal Rule of Appellate Procedure 40 and Federal Circuit Rule 40, petitions the panel for rehearing of its decision dated February 16, 2016. Lismont respectfully submits that summary judgment of laches in Lismont's 35 USC §256 action to correct the inventorship of Binzel-Germany's U.S. patent should not have been affirmed because Lismont's delay was excused by his litigation of the inventorship of the corresponding German patent. Lismont further submits that the panel's ruling that Lismont gave insufficient notice to Binzel-Germany regarding the German litigation was based on fundamental errors of fact and law regarding the disclosure of the Second German Complaint and the legal significance of that disclosure.

## THE POINTS OF LAW OR FACT OVERLOOKED OR MISAPPREHENDED BY THE COURT

The panel clearly erred in concluding that Mr. Lismont's foreign litigation against Binzel-Germany to correct the inventorship of Binzel-Germany's corresponding German patent did not excuse his delay in filing suit against Binzel-Germany in the U.S. under 35 USC §256 to correct the inventorship of Binzel-Germany's corresponding U.S. '406 patent. The basis for the panel's conclusion was that Lismont failed to provide any notice to Binzel-Germany, including in Lismont's Second German Complaint in 2002 (see pp. 13-14 of the Panel Opinion), that the issue of inventorship of the U.S. patent would eventually be litigated in the United

States if left unresolved upon conclusion of the litigation regarding the German patent.

In reaching what we submit to be a legally clearly erroneous conclusion, the panel either overlooked or misapprehended the facts of what was alleged by Lismont on the face of the Second German Complaint, and it either overlooked or misapprehended the legal significance of these allegations as providing the requisite notice.

In point of fact, the Second German Complaint contained a charge by Lismont that the inventorship of Binzel-Germany's U.S. '406 patent was incorrect, that the named inventor Richard Sattler was not the true inventor of the U.S. patent, and that Lismont was the true inventor of the U.S. patent.

In point of law, under the jurisprudence of this Court, such a charge created a reasonable apprehension in Binzel-Germany that Lismont would bring a §256 action against Binzel-Germany upon the conclusion of the German patent proceedings. Consequently under the undisputed facts as to what the Second German Complaint alleged and their legal significance, there was adequate notice as a matter of law, making the German patent litigation a reasonable excuse for Lismont's delay, or at the very least those facts, coupled with undisputed facts regarding the circumstances of the notice, created a triable genuine issue of material fact as to the adequacy of the notice, rendering summary judgment against Lismont improper.

## FACTUAL BACKGROUND

The German and U.S. patents-in-suit are owned by the same defendant, Binzel-Germany. Binzel-Germany and Richard Sattler are parties in common to both the German and the U.S. proceedings.

In 2000 Lismont commenced litigation in Germany to correct the inventorship of Binzel-Germany's corresponding German patent seeking to replace Richard Sattler, the CEO of Binzel-Germany's parent, as the inventor with Hedwig Lismont (JA0825 ¶34). In August of 2002 Binzel-Germany's corresponding U.S. patent issued, also naming Sattler as sole inventor. In December of 2002 Lismont filed a second German complaint, seeking worldwide damages against Binzel-Germany (JA0692-0696).

In the Second German Complaint Lismont specifically charged that the inventorship of the corresponding U.S. patent was incorrect under U.S. law and that the true inventor was Hedwig Lismont, not Richard Sattler under U.S. law. Litigation regarding the German patent continued to 2013, whereupon Lismont had been unsuccessful and had exhausted three judicial avenues to reverse the original rulings and order a new trial (the German Supreme Court, the German Constitutional Court, and the European Court of Human Rights (ECHR)).

In October of 2012, shortly before the decision by the ECHR, Lismont brought an action under 35 USC §256 in Virginia federal district court against Binzel-Germany, Richard Sattler, and Binzel-U.S. to correct the inventorship of the U.S. '406 patent, which action included a conditional claim of patent infringement.

3

In 2014 the district court granted summary judgment of laches against Lismont, finding that the litigation regarding the German patent did not excuse Lismont's delay in filing suit in the U.S. because there was inadequate notice to Binzel-Germany that the issue of the inventorship of the U.S. patent would be addressed upon conclusion of the German proceedings. On February 16, 2016, this panel affirmed the judgment of the district court.

## ARGUMENT

**I.**     **The Panel Erred in Holding that the Second German Complaint Did Not Contain the Requisite Notice to Binzel-Germany that the U.S. patent would be litigated in the U.S. upon the conclusion of the foreign proceedings**

      **A.**     **The Panel Overlooked or Misapprehended the Facts in the Second German Complaint that constituted a notice of incorrect inventorship of the U.S. patent**

The panel at pages 13-14 of the Opinion stated:

> Mr. Lismont has not pointed to anything in the record from which a fact-finder could conclude that Binzel-Germany expected further litigation after completion of the Second German Litigation, especially not in a forum other than Germany.

> *** There are no assertions in the complaint filed in the Second German Litigation indicating that Mr. Lismont was pursuing the issue of inventorship as to the '406 patent. More importantly, there are no assertions in the complaint that could serve to notify Binzel-Germany that this issue would eventually be litigated in the United States if left unresolved upon conclusion of the litigation abroad.

Respectfully, these statements are factually incorrect. The Second German Complaint on its face levels a charge against Binzel-Germany that the inventorship of

the U.S. '406 patent is incorrect under U.S. law, that Richard Sattler is not the true

inventor of the U.S. patent and that Hedwig Lismont is the true and sole inventor of

the U.S. patent-in-suit.

This is shown by the following portions of the Second German Complaint (JA

695-696):

> Within the framework of a customer order for the defendants in Nr. 1 [Binzel-Germany], late summer 1996 the plaintiff [Hedwig Lismont] independently developed a new process, which lead to considerable qualitative and cost-related advantages in the manufacture of a mass-produced article "power nozzle."

> The defendant [Binzel Germany] … registered this invention *without the consent* of the plaintiff [Hedwig Lismont] on 30.08.1997 and *against better knowledge*, indicated and named the defendant in Nr. 4 [Richard Sattler] as the inventor.

> \*\*\*

> In a previous attempt on the part of the defendant [Binzel Germany] for a temporary injunction, the 6th Civil Senate of the Regional Appeal Court Frankfurt/Main already made a determination on 20.06.2001 Az. 6W 75/01 and [the Regional Appeal Court] advised [notified] the defendants [Binzel-Germany, Richard Sattler, et al.] that they [Binzel-Germany, Richard Sattler, et al.] are obliged [ordered] to disclose to third parties that the inventor status of the patent is involved in a lawsuit.

> \*\*\*

> *Nevertheless the defendants* [Binzel-Germany, Richard Sattler, et al.] *registered the patent worldwide*. In the final step *the defendants concealed [this during] the US-patent application procedure* [prosecution].

> Evidence:    1. Declaration for patent application" from 26.01.2000 [the U.S. patent application declaration by Richard Sattler]
> 2. Extract from the Assignment File [the assignment of the U.S. patent application by Richard Sattler to Binzel-Germany]

It is generally known that during entry into the national phase in the USA it is *an absolute requirement of the applicant (inventor) to take an affirmation oath*. To this the defendant in Nr. […] 4 [Richard Sattler] *falsely delivered declaration […] (that he was the sole inventor). This [falsely delivered declaration]* was submitted to the appropriate American patent office. *Under contempt* of the aforementioned determination by the [the Regional Appeal] Court on 20.06.2001, the process [prosecution] at US-patent office was further pursued and the defendants obtained a US-patent on 06.08.2002.

*** 

In this context i[t] should be mentioned that a criminal case has been initiated against defendant[.]… Nr. 4 [Richard Sattler], which is being conducted by the Public Prosecutor's Office Frankfurt/Main under Az. 3230 Js 223031/02.

(Emphasis added.)  In the previous portion, Lismont directly references the USA, the U.S. Patent Office, the U.S. patent application, the U.S. patent-in suit, and U.S. patent inventorship law ("absolute requirement of the applicant (inventor) to take an affirmation oath."), Lismont accuses Binzel-Germany of a "falsely delivered declaration" to the US Patent Office and Lismont notes that he filed a formal accusation in Germany, namely, criminal charges, asserting that Richard Sattler has committed a crime by a false affidavit claiming inventorship.

What is unmistakable from these passages is that Lismont is charging that the U.S. patent's inventorship was incorrect under U.S. law ("during entry into the national phase in the USA it is an absolute requirement of the applicant (inventor) to take an affirmation oath"), being based on a false declaration under U.S. law by Sattler that he was the true and sole inventor ("To this the defendant in Nr. 4 [Richard

Sattler) falsely delivered declaration […] (that he was the sole inventor). This [falsely delivered declaration] was submitted to the appropriate American patent office."). Furthermore the subsequent prosecution of the U.S. patent application and resultant issuance of the U.S. patent-in-suit with incorrect inventorship was done without informing the U.S. Patent Office that the inventorship was in dispute in Germany, in direct violation of a German court order dated June 20, 2001 against Binzel-Germany that such disclosure be made ("Under contempt of the aforementioned determination by the [the Regional Appeal] Court on 20.06.2001, the process at US-patent office was further pursued and the defendants obtained a US-patent on 06.08.2002.").

These facts clearly demonstrate not only that Lismont was leveling a charge at Binzel-Germany that the inventorship of the U.S. patent was wrong under U.S. law based on a false U.S. inventorship declaration, consistent with the criminal charge of a false affidavit on inventorship in Germany, but also that Binzel-Germany's obtaining the U.S. patent without advising the U.S. Patent Office that the inventorship was being disputed by Lismont in Germany was in contempt of the German court's order for disclosure to third parties of the inventorship dispute. Lismont was stating in no uncertain terms that he objected to the issuance of the U.S. patent in the name of Sattler instead of Lismont as inventor.

### B.    The Panel Overlooked or Misapprehended the Legal Significance of the Charge of Incorrect Inventorship of the U.S. Patent as Establishing in Binzel-Germany a Reasonable Apprehension that Lismont would bring a §256 Action regarding the U.S. patent at the Conclusion of the Proceedings Regarding the German Patent

This Court has said that the test for whether other litigation excuses delay in filing suit is whether the notice of the other litigation is such that "[the defendant] had reason to believe it was likely to be sued." *Vaupel Textilmaschinen KG v. Meccanica* Euro *Italia SPA*, 944 F.2d 870, 878 (1991). In other words, whether the defendant had a reasonable apprehension of suit. The legal significance of the allegations on the face of the Second German Complaint is, under the jurisprudence of this Court relating to §256, to establish in Binzel-Germany a reasonable apprehension that Lismont would bring a §256 action against Binzel-Germany in the U.S. upon the conclusion of the German patent proceedings, thereby meeting this Court's notice requirement for a foreign litigation to be a reasonable excuse for delay.

Thus in the context of declaratory judgment jurisdiction relating to inventorship, this Court in *Fina Oil and Chemical Co. v. Ewen*, 123 F.3d 1466 (1997), addressed the legal significance of a charge of incorrect inventorship of a U.S. patent made in related (state court) litigation. In the state court a named inventor, Dr. Ewen, of a U.S. patent had brought a cross claim against the patent owner, Fina, seeking a constructive trust for proceeds from technology covered by the U.S. patent. In the course of that litigation Dr. Ewen had alleged that the inventorship of the patent was

incorrect in that Fina had improperly added his named coinventor Dr. Razavi to the

patent. Relying on Dr. Ewen's allegations in state court, Fina had brought a

declaratory judgment action in federal district court to obtain a judicial determination

of the correct inventors. Before reaching the merits, this Court first addressed

whether there was a justiciable controversy. It initially announced a test for

determining subject matter jurisdiction:

> We hold that a declaratory plaintiff may establish an actual controversy
> in this [inventorship] context by averring: (1) that it holds a recognized
> interest in a patent that could be adversely affected by an action brought
> under section 256, and 2) another party with a right to bring an action
> under section 256 has created in the declaratory plaintiff a reasonable
> apprehension that it will do so.[1]

It then applied this test to the facts of the case, first addressing element (1) of the test:

> Applying the standard stated above to the facts of this case, we cannot
> say that the district court legally erred in finding an actual controversy,
> nor, once it found an actual controversy, that the court abused its
> discretion in exercising jurisdiction. As the owner of the '851 patent,
> Fina clearly has a recognized interest in the patent that could be
> adversely affected by a section 256 action.

---

[1] We are of course aware that the reasonable apprehension test is no longer *necessary*
for declaratory judgment jurisdiction in the patent infringement context in view of the
Supreme Court's decision in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).
However, post *MedImmune* this Court has found satisfaction of the reasonable
apprehension test to be *sufficient* for such jurisdiction. *In Caraco Pharm. Labs., Ltd. v.
Forest Labs., Ltd.*, 527 F.3d 1278, 1291 (Fed.Cir.2008), this Court held that based on
*MedImmune*, "proving a reasonable apprehension of suit is one of multiple ways that a
declaratory judgment plaintiff can satisfy the more general all-the-circumstances test
to establish jurisdiction."

It then turned to element (2) and found it met in language directly applicable to the present case:

> *Fina also had a reasonable apprehension that Dr. Ewen would bring a section 256 action to correct inventorship.* At the time Fina filed this action, the parties were ensnared in a state court dispute in which serious charges had been made concerning inventorship and assignment with respect to the '851 patent. In particular, Dr. Ewen had alleged in the state court case that Fina had improperly added Dr. Razavi to the patents covering metallocent catalysts, including the '851 patent.

(Emphasis added.) In precisely the same way, Mr. Lismont's allegations in the Second German Complaint that Richard Sattler, a defendant in the German proceedings, had been improperly substituted as sole inventor for Lismont in the '406 U.S. patent created *a reasonable apprehension* in Binzel-Germany, also a defendant to the German proceedings and the owner of the US and German patents in suit, that Lismont would bring a section 256 action to correct the inventorship of the U.S. patent. Since Binzel-Germany was well aware that Lismont was steadfastly engaged in litigation on Binzel-Germany's corresponding German patent because Binzel-Germany was sitting across the table from Lismont, so to speak, it would have reasonably assumed that Lismont would bring suit in the U.S. related to the Binzel-Germany owned US patent upon conclusion of the German proceedings, which is essentially what Lismont did, though jumping the gun slightly by not awaiting the decision by the ECHR.

Other undisputed facts confirm the reasonableness of Binzel-Germany's apprehension. Lismont was not a wealthy individual, and German patent litigation is expensive (no contingent fee option). Binzel-Germany would have readily understood

that Lismont would not have wanted to take on the U.S. patent while his litigation was ongoing with regard to the German patent. In addition Binzel had secured patents in eight other countries besides the U.S. (JA0821 ¶18), yet the only specific allegation of incorrect inventorship that Lismont made in the Second German Complaint besides the German patent was the U.S. patent. This too is understandable when one considers that the largest market outside of Germany for the patented torch tips was the United States. Finally, Binzel-Germany understood from the German court order dated June 20, 2001 that it was bound to disclose to interested third parties (including foreign patent offices) that the inventorship was in dispute in Germany, certainly with the intent that these patent offices would correct the inventorship, especially the U.S., where inventorship is so fundamental to the patent right. Having frustrated Lismont's expectations by refusing to comply with the German court order, Binzel-Germany had to expect that Lismont would resort to the only other means available of correcting the inventorship of the U.S. patent, namely, a §256 action in the U.S.

This Court sitting *en banc* in *A. C. Aukerman Co. v. R. L. Chaides Construction Co.,* 960 F.2d 1020, 1039 (1992) (reversing summary judgment of laches and remanding), held that there should be "*no rigid requirement*" for notice when other litigation is put forward as the excuse for the delay. Here, Binzel-Germany was well aware of Lismont's German litigation because it was the defendant. As this Court said in *Vaupel* at 878, any requirement of notice of the other litigation would have been

11

"superfluous" when the defendant already knew of the other litigation. And this is especially true where Lismont had made it perfectly clear on the face of the Second German Complaint that the inventorship of Binzel-Germany's owned U.S. patent was misrepresented and wrong under U.S. patent law. A specific notice to Binzel-Germany that Lismont was going to sue it in the U.S. under section 256 upon conclusion of the proceedings regarding the German patent was unnecessary as Binzel-Germany already had a reasonable apprehension that this was going to happen. *See Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2002) (declaratory judgment plaintiff had reasonable apprehension of infringement suit where patentee had charged it was using its technology without a license, had sued it for trade secret theft and unfair competition and "filing a lawsuit for patent infringement would be just another logical step in [patentee's] quest to protect its technology").

### C.    Lismont's right to make supporting arguments in response to the panel's manifest factual errors which lead the panel to a clearly erroneous legal conclusion

At the outset, we submit that Lismont has every right to make arguments as to why a specific set of important facts omitted or misapprehended in the panel's opinion is outcome determinative for a remand or reversal of the district court judgment. All of Lismont's arguments are directly responsive to and demonstrative of the legal significance of the panel's fundamental overlooking or misapprehension of a

12

specific set of omitted facts. In particular the panel opinion understood that Lismont was relying on the second German complaint as affording the notice necessary to make the German litigation a reasonable excuse for his delay. It is therefore fair game to allow Lismont to point out what he submits to be clear errors of omission or misapprehension in the panel's treatment of what was disclosed on the face of that Complaint and the legal consequences of that disclosure. Throughout, Lismont has consistently made the same claim, namely, that there is no laches in this case.

Lismont's position is consistent with Supreme Court caselaw. In *Yee v. City of Escondido,* 503 U.S. 519, 534 (1992), in a unanimous decision, the Supreme Court held that "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below" ).  .

The Federal Circuit adheres to *Yee.* In *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1347 (Fed. Cir. 2001), this Court held that although a party cannot change the scope of its claim construction on appeal, a party is not precluded "from proffering additional or new supporting [appellate] arguments, based on evidence of record, for its claim construction" and in *Highmark, Inc. v. Allcare Health Management Systems, Inc.*, 687 F.3d 1300, 1314, n.5 (Fed. Cir. 2012) *vacated and remanded on other grounds* 134 S. Ct. 1744 (2014), this Court cites to *Yee* approvingly.  The present petition argues the points of fact and law overlooked or misapprehended by the panel in incorrectly affirming the lower court.

### D.    Lismont seeks equity and fairness

There are at least two reasons why equity and fairness favor allowing Lismont to proceed with his suit. First, defendants Binzel-Germany and Richard Sattler were ordered by the German District Court on June 20, 2001, to notify interested third parties regarding their German inventorship dispute and Lismont's claimed sole inventorship status.  Defendants, who are also defendants in the present action, refused to comply with this court order; thus, they never informed the US Patent Office regarding two pending German litigations. Because of their contempt they obtained a US patent naming Sattler as sole inventor. It would be utterly inequitable today for Binzel-Germany and Richard Sattler to reap the benefit of their defiance to hold that there was no notice by Lismont regarding the US inventorship dispute, when the defendants in this proceeding, Binzel-Germany and Richard Sattler, were judicially ordered to provide notice themselves to the U.S. Patent office regarding the inventorship dispute.

Second it is absolutely clear that Lismont's charge of incorrect inventorship of the U.S. '406 patent made on the face of the Second German Complaint created a justiciable controversy with Binzel-Germany regarding the inventorship of the U.S. patent. *Fina, supra; see Cardinal Chem. Co. v. Morton International,* 508 U.S. 83, 96 ("If, in addition to that desire, a party has actually been charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support jurisdiction of a complaint, or a counterclaim, under the Act."). Hence if at any time during the foreign

proceedings and for any reason Binzel-Germany had wanted to bring the issue of the inventorship of the U.S. patent to a head, all it had to do was file a declaratory judgment action in the U.S. under §256. It was not at Lismont's mercy as to when the U.S. patent inventorship rights could be litigated. Indeed Judge Learned Hand made this very point in the patent infringement context in *Clair v. Kastar, Inc.*, 148 F.2d 644, 646 (2nd Cir. 1945):

> While a patentee is getting his patent sustained he is not bound to assert his claims to their fullest scope by suing every conceivable infringer. There is today some reciprocity of duty in this regard; if a manufacturer fears that he will be charged to infringe, he can always inquire of the patentee, and if the answer is unsatisfactory, he can bring an action for a declaratory judgment. The time has now passed when a patentee may sit by and refuse to show his hand. The defendant's putative uncertainties seem to us to have been of its own making.

Like Lismont, Binzel-Germany too was content to let the U.S. wait until proceedings regarding the German patent were completed. It is therefore perfectly fair and reasonable to let Hedwig Lismont have his day in U.S. court now to have a judicial determination of the inventorship of the U.S. '406 patent.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons stated above, Lismont requests that the Court vacate its ruling, reverse the district court's judgment and remand for further proceedings.

Alternatively, Lismont asks that this Court restore this case to the calendar for reargument or resubmission.

Dated:  March 14, 2016                    Respectfully submitted,

                                          /s/ Frank P. Porcelli
                                          Frank P. Porcelli
                                          Fish & Richardson P.C.
                                          One Marina Drive
                                          Boston, Massachusetts 02210-1878
                                          Telephone (617) 542-5070
                                          E-mail:  porcelli@fr.com

                                          *Attorneys for Plaintiff-Appellant Hedwig Lismont*

# ADDENDUM

# United States Court of Appeals for the Federal Circuit

———————————

**HEDWIG LISMONT,**
*Plaintiff-Appellant*

v.

**ALEXANDER BINZEL CORPORATION,
ALEXANDER BINZEL SCHWEISSTECHNIK GMBH
& CO. KG, IBG INDUSTRIE-BETEILIGUNGS-GMBH
& CO. KG, RICHARD SATTLER,**
*Defendants-Appellees*

———————————

2014-1846

———————————

Appeal from the United States District Court for the Eastern District of Virginia in No. 2:12-cv-00592-MSD-LRL, Judge Mark S. Davis.

———————————

Decided: February 16, 2016

———————————

FRANK PORCELLI, Fish & Richardson, P.C., Boston, MA, argued for plaintiff-appellant.

DOUGLAS A. DOZEMAN, Warner Norcross & Judd LLP, Grand Rapids, MI, argued for defendants-appellees. Also represented by AMANDA M. FIELDER.

———————————

Before LOURIE, REYNA, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge*.

This appeal arises from an inventorship dispute between Hedwig Lismont (Mr. Lismont) and Alexander Binzel Schweisstechnik GmbH & Co. KG (Binzel-Germany), Abicor Unternehmensverwaltungs GmbH (Abicor), IBG Industrie-Beteiligungs-GmbH & Co. KG (IBG), Richard Sattler (Mr. Sattler), and Alexander Binzel Corporation (Binzel-USA) (collectively, Appellees). The United States District Court for the Eastern District of Virginia granted summary judgment in favor of Appellees, concluding that Mr. Lismont's inventorship claim, which he filed ten years after the patent issued, was barred by laches. *See Lismont v. Alexander Binzel Corp.*, No. 2:12-cv-592, 2014 WL 4181586 (E.D. Va. Aug. 20, 2014). Because we agree with the district court's conclusion that the presumption of laches applies against Mr. Lismont's claim and that he failed to rebut that presumption, we affirm.

## Background

Mr. Lismont is a resident and citizen of Belgium. Binzel-Germany[1] is a German company that manufactures welding equipment, including welding contact tips for use in metal inert gas welding. Binzel-Germany is the owner of German Patent No. 197 37 934 (DE '934 patent) filed on August 30, 1997, which serves as the priority document for a PCT application filed in 1998. Binzel-Germany also owns the patent at the heart of this dispute, United States Patent No. 6,429,406 (the '406 patent), entitled "contact tip." The '406 patent, which issued in 2002 to Mr. Sattler, claims priority to the 1998 PCT application. The claims of the '406 patent are generally

---

[1]    Binzel-Germany is affiliated with Abicor and is wholly owned by IBG. Binzel-USA is a wholly owned subsidiary of Abicor and IBG.

directed to a method of manufacturing a contact tip for use in metal inert gas welding. The '406 patent explains that this process is more cost-effective than prior art methods.

Mr. Lismont asserts that, beginning in 1995, he developed the method of manufacturing contact tips disclosed in both the DE '934 patent and the '406 patent in response to Binzel-Germany's request for assistance in developing a lower-cost manufacturing process. Mr. Lismont further alleges that by mid-1997, he had fully developed his proposed manufacturing process and disclosed the details of the process to Binzel-Germany. Mr. Lismont also contends that, despite numerous representations from Binzel-Germany that he was the first to conceive of this method, Binzel-Germany filed the DE '934 patent application naming Mr. Sattler, a Binzel-Germany employee, as the inventor, rather than Mr. Lismont. Binzel-Germany filed its patent application on August 30, 1997, and one year later, on August 13, 1998, Binzel-Germany filed PCT Application No. PCT/EP98/05138 covering the same method of manufacturing contact tips. As with the DE '934 patent application, Binzel-Germany did not identify Mr. Lismont as an inventor on its PCT Application. This PCT Application resulted in issued patents in numerous countries, including the '406 patent in the United States.

On October 13, 2000, two years after the DE '934 patent issued, Mr. Lismont initiated litigation against Binzel-Germany in the German Regional Federal Court in Frankfurt, Germany (First German Litigation). In this litigation, Lismont maintained that he was the sole inventor of the subject matter disclosed in the DE '934 patent and therefore sought to change inventorship on the German patent.

In addition, on June 24, 2002, Mr. Lismont's attorneys sent a letter to the named inventor of the DE '934 patent,

Mr. Sattler, demanding damages for his purportedly false declarations of inventorship.  The letter noted that Binzel-Germany had filed a patent application in the United States Patent and Trademark Office (PTO) and explained that, if Mr. Lismont did not receive compensation for his contribution toward inventing the claimed method, he would be "extensively assessing and pursuing your conduct and actions from every legal perspective."  Joint Appendix (J.A.) 1554.[2]  The letter further stated that if Binzel-Germany did not respond by July 5, 2002, Mr. Lismont would "initiate the necessary legal steps without further notice."  *Id.*  Neither Mr. Sattler nor Binzel-Germany responded.  Accordingly, in December 2002, Mr. Lismont filed a second action in Germany (Second German Litigation) against Binzel-Germany, Abicor, and Mr. Sattler, seeking damages related to his inventorship claim.  The complaint in the Second German Litigation also sought information about the countries in which Binzel-Germany was pursuing patents and information about the manufacture and sales of contact tips that used the method disclosed in the DE '934 patent.

Ultimately, the German courts ruled against Mr. Lismont in both cases for essentially the same reasons: that he failed to prove that he had an inventorship interest in the DE '934 patent.  Specifically, on December 18, 2008, the German court concluded that Mr. Lismont had not proven that he was either the sole inventor or a joint inventor of the inventive process disclosed in the DE '934 patent.  Mr. Lismont appealed this decision to the German Supreme Court, which rejected his appeal on November 25, 2009.  After losing his inventorship claim and

---

[2]    The record before us contains numerous English translations of documents from the German litigations.  Neither party has challenged the accuracy of these translations.

his related claim for damages, Mr. Lismont also filed actions in the German Federal Constitutional Court and in the European Court of Human Rights. These two cases were not appeals from the German Supreme Court's rejection of his appeal, but were separate actions claiming that the earlier proceedings amounted to a denial of basic due process in violation of his constitutional or human rights, respectively.

On October 31, 2012, twelve years after Mr. Lismont initiated the First German Litigation, he initiated the underlying litigation seeking, among other things, to correct inventorship of the '406 patent under 35 U.S.C. § 256(a). After the parties engaged in discovery tailored to the issue of laches, Appellees filed a motion for summary judgment asserting that Mr. Lismont's inventorship claim was barred by laches. The district court agreed and entered judgment in favor of Appellees. Mr. Lismont filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

"Laches is an equitable defense that may bar an inventorship claim." *Serdarevic v. Advanced Med. Optics., Inc.*, 532 F.3d 1352, 1358 (Fed. Cir. 2008). To prevail on a defense of laches, a defendant must establish that (1) the plaintiff's delay in filing a suit was "unreasonable and inexcusable"; and (2) the defendant suffered "material prejudice attributable to the delay." *A.C. Aukerman v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc); *see also SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 807 F.3d 1311, 1317 (Fed. Cir. 2015) (en banc). Further, a rebuttable presumption of laches attaches whenever more than six years passes from the time a purportedly omitted inventor knew or should have known of the issuance of the relevant patent. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1163 (Fed. Cir. 1993); *Serdarevic*, 532

F.3d at 1358.  This presumption of laches may be rebutted if the plaintiff "offer[s] evidence to show an excuse for the delay or that the delay was reasonable" or by offering "evidence sufficient to place the matters of defense prejudice and economic prejudice genuinely in issue." *Aukerman*, 960 F.2d at 1038.

Here, the district court concluded at the summary judgment stage that Mr. Lismont's inventorship claim was barred by laches.  We review the grant of summary judgment under the law of the regional circuit.  *Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1378 (Fed. Cir. 2013).  The Fourth Circuit generally reviews the grant or denial of summary judgment *de novo*. *See Myers v. Finkle*, 950 F.2d 165, 167 (4th Cir. 1991). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The issue of laches, however, "is committed to the sound discretion of the district court."  *Aukerman*, 960 F.2d at 1032.  Because the factors underlying a laches determination—unreasonable delay and prejudice—are factual in nature, genuine issues of material fact as to these factors will preclude summary judgment in favor of the defendant.  For this reason, "[w]hen reviewing a laches decision rendered on summary judgment, this court reviews for an abuse of discretion unless genuine issues of material fact preclude summary judgment." *Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 1331, 1334 (Fed. Cir. 2012).

If the presumption of laches attaches, a plaintiff may defeat summary judgment by "rais[ing] a genuine dispute as to either delay or prejudice."  *Hemstreet v. Comput. Entry Sys. Corp.*, 972 F.2d 1290, 1293 (Fed. Cir. 1992).  If the plaintiff makes such a showing, the presumption dissolves and the defendant is then "put to its proof on both factors" and "must affirmatively prove (1) unreasonable and inexcusable delay and (2) prejudice

resulting from that delay." *Id.* If, however, we agree with the district court that there are no genuine issues of material fact, we may set aside the imposition of laches if "the decision rests on an erroneous interpretation of the law or on clearly erroneous factual underpinnings." *Serdarevic*, 532 F.3d at 1358; *see also Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012) ("The court has abused its discretion if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." (internal quotation marks omitted)).

On appeal, Mr. Lismont first asserts that the district court should not have applied the laches presumption against his inventorship claim. Alternatively, Mr. Lismont seems to argue that his litigation in the German and European courts served as notice to Binzel-Germany that an inventorship suit in the United States was likely forthcoming and thus was sufficient to excuse his delay and rebut the presumption of laches. We address each argument in turn.

## I. Presumption of Laches

The district court found, based on a statement made by Mr. Lismont to the German court, that Mr. Lismont undisputedly knew by February 12, 2001, that Binzel-Germany and/or Mr. Sattler had already filed the application that eventually issued as the '406 patent. Because Mr. Lismont knew of the application before the '406 patent issued, the district court concluded that the laches clock started to run when the '406 patent issued on August 6, 2002. *See Pei-Herng Hor*, 699 F.3d at 1335 ("[T]he laches clock [can]not start to run—at the earliest—until the patent issue[s].").  More than ten years later, on October 31, 2012, Mr. Lismont initiated the present action. Given that this delay exceeded six years, the district court found that the rebuttable presumption of laches attached. *Serdarevic*, 532 F.3d at 1358 ("'A delay

of more than six years after the omitted inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches.'" (quoting *Advanced Cardiovascular Sys.*, 988 F.2d at 1163)).

Mr. Lismont argues that he did not delay in initiating the underlying action because he had been diligently seeking to vindicate his inventorship rights in German and European courts. Mr. Lismont further asserts that he specifically sought resolution of the '406 patent inventorship issue in the Second German Litigation when he requested "worldwide damages, including in the U.S., and a worldwide declaration of liability, including in the U.S." Appellant Br. 25. Thus, according to Mr. Lismont, the parties have been litigating inventorship of the '406 patent in Germany since he filed the Second German Litigation in 2002 and the presumption of laches is therefore inappropriate.

We disagree. The relevant inquiry for the laches presumption is whether more than six years passed between the time when the inventor knew or should have known of the subject patent and the time the inventor initiated litigation. *See Aukerman*, 960 F.2d at 1034. As the district court correctly recognized, Mr. Lismont was aware that Binzel-Germany had filed a U.S. patent application covering the manufacturing method he allegedly invented before the '406 patent issued. Accordingly, to avoid the imposition of the rebuttable laches presumption, Mr. Lismont should have filed his United States inventorship litigation within six years of August 6, 2002, the date on which the patent issued. Because it is undisputed that he waited more than ten years from that date to initiate this litigation, the district court correctly found that the presumption of laches attached.

As to Mr. Lismont's contention that he was attempting to correct the inventorship of the '406 patent in his foreign litigation, he has not pointed to any allegations in

his German or European litigations in which he sought to correct the inventorship of the '406 patent.[3]  In his complaint in the Second German Litigation, Mr. Lismont requested that Binzel-Germany "issue the plaintiff information, when and where the protected invention specified . . . was also registered and if applicable where it was published or rather issued, as well as to provide the plaintiff information about the respective current process status."  J.A. 694.  In addition, the complaint seeks "a rendering of accounts regarding the scope of the preceding and committed acts and . . . a description of the quantity of the goods manufactured, as well as the individual deliveries by designating the delivery quantity, delivery price, and the names and addresses of the recipients."  *Id.*  Finally, the complaint asks the German court "[t]o determine that the defendants are obligated as joint debtors to make up for all losses incurred by the plaintiff, which were committed against him through the acts [alleged in the complaint] and the losses that will be incurred in the future."  *Id.*  Based on these statements in the complaint, a fact-finder could conclude that Mr. Lismont was seeking compensation for worldwide damages, but there is noth-

---

[3]    This argument is based on the questionable assumption that, even if properly presented, the German court could or would resolve the issue of inventorship on the '406 patent such that no litigation in the United States would be necessary.  Mr. Lismont has not pointed to any authority supporting the proposition that a German court may declare rights under a United States patent.  In fact, Mr. Lismont's attorney acknowledged at oral argument that even if the German courts had discussed inventorship of the '406 patent, an action in the United States would have nevertheless been necessary to correct inventorship on the '406 patent.  *See* Oral Argument at 4:26–4:48 *available at http://oralarguments. cafc.uscourts.gov/default.aspx?fl+2014-1846.mp3.*

ing in the complaint indicating that he was also asking the German court to correct the inventorship on the '406 patent as provided by 35 U.S.C. § 256.

For these reasons, Mr. Lismont's argument that he was continuously litigating the issue of inventorship of the Binzel-Germany's United States patent fails. We therefore affirm the district court's conclusion that a presumption of laches was appropriate in this case.

## II. Rebutting the Presumption

Although Mr. Lismont's litigation abroad may not be used to avoid a presumption of laches, it may help to rebut that presumption. *Serdarevic*, 532 F.3d at 1359–60 (holding that one option for overcoming the presumption of laches is to rebut it with "evidence to show an excuse for the delay or that the delay was reasonable").[4] We have previously recognized that "[a] patent owner may avoid the consequences of what would otherwise be an unreasonable delay in filing suit by establishing that he or she was engaged in 'other litigation.'" *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 876–77 (Fed. Cir. 1991). We have also recognized that it is not an abuse of discretion to consider litigation

---

[4]   In addition to deciding that Mr. Lismont could not prove that his delay was either reasonable or excusable, the district court also concluded that Mr. Lismont had failed to rebut the presumption by showing the existence of a genuine issue as to prejudice. Mr. Lismont does not, however, raise this as a ground for reversal in his opening brief. To the extent his reply brief can be construed as objecting to the district court's conclusions on the prejudice factor, this argument is waived. *See Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990) ("[A]n issue not raised by an appellant in its opening brief . . . is waived.").

in fora outside the United States when determining excusable delay. *See Mainland Indus., Inc. v. Standal's Patents Ltd.*, 799 F.2d 746, 749 (Fed. Cir. 1986) (overruled on other grounds by *A.C. Aukerman*, 960 F.2d at 1038–39) ("[W]e are unwilling to say as a matter of law that litigation in non-United States forums cannot be considered in determining excusable delay . . . ."); *see also* 6A Donald S. Chisum, Chisum on Patents § 19.05[2][b][i] (Matthew Bender) (recognizing that proceedings including "court action in a foreign country concerning the same invention and similar issues of fact and law" could be used to excuse delay, "subject to the notice requirement applied to litigation").

For other litigation to excuse a plaintiff's delay, however, the defendant must have adequate notice of the other proceedings as well as plaintiff's intention to pursue its patent rights upon completion of the other proceedings. *Vaupel*, 944 F.2d at 877. "What is important is whether [the defendant] had reason to believe it was likely to be sued." *Id.* at 878. For example, in *Vaupel*, we found that a plaintiff's delay in filing suit could be excused by its engagement in reissue proceedings in which the defendant participated so long as "the evidence as a whole show[ed] that the accused infringer was in fear of suit." *Id.* Specifically, the evidence in *Vaupel* supported the conclusion that the infringer was in fear of suit based on (i) a letter sent by the plaintiff to the defendant declaring that it would "protect its [U.S. patent] and look after our rights" and requesting discussions with the defendant before "plunging into court proceedings"; (ii) a letter sent by the defendant to the PTO during the reissue proceedings acknowledging the "continued threats of infringement"; and (iii) a letter sent by the defendant to the plaintiff during the same time period threatening a declaratory judgment action. *Id.* We thus found that the defendant was sufficiently aware of the threat of litigation upon completion of the reissue proceedings. *Id.*

Although the "other litigation" excuse is typically invoked when a plaintiff is serially asserting its patents against different defendants, in circumstances like those presented in this case, the defendant in the foreign litigation must likewise receive adequate notice that the plaintiff intends to later pursue its rights under United States patents after termination of the proceedings in the foreign jurisdiction. We agree with the district court that the mere initiation of patent litigation in a foreign jurisdiction and the existence of United States patents are not sufficient to notify a defendant that the plaintiff will eventually seek to assert its patent rights in the United States.

Mr. Lismont points to three possible sources of the requisite notice.[5] Mr. Lismont first points to a document filed in the First German Litigation in which he stated that "the witness Sattler has applied for the patent that is in dispute here in the Unite[d] States in his own name as inventor" and then stated that an "extension of claim according to § 263 ZPO is therefore expressly reserved." J.A. 1556. Mr. Lismont contends that this statement notified Binzel-Germany that he was reserving his right to assert correction of inventorship on the '406 patent. Mr. Lismont is incorrect. "ZPO" refers to the German Code of Civil Procedure and section 263 of the German Code of Civil Procedure permits amendments to pleadings

---

[5] On appeal, Mr. Lismont does not maintain his argument that his delay should be excused because of the parties' settlement negotiations between July and September 2012. Even if he had, however, the district court was correct to conclude that "a tolling of the laches period for three months [during these settlement negotiations] would make little difference . . . , as the overall time between the issuance of the U.S. patent and the filing of Plaintiff's action . . . amounts to nearly a decade." *Lismont*, 2014 WL 4181586, at *8.

pending in a German civil action.  Thus, Mr. Lismont's reference to "§ 263 ZPO" reserves only his right to "extend" his German claim in front of the German court. Nothing in this statement could lead a reasonable fact-finder to infer that Mr. Lismont communicated his intent to pursue a separate inventorship claim in a United States court.

Next, Mr. Lismont relies on the June 2002 Letter to Mr. Sattler.  In this letter, he (i) noted the filing of a U.S. patent application naming Mr. Sattler as the inventor; (ii) advised that Mr. Lismont would "carefully examine and prosecute your conduct and actions in all legal respects"; and (iii) notified Mr. Sattler that failure to pay damages would result in the initiation of "appropriate legal action with no further notification."  J.A. 1396–97. Again, this communication lacks any indication that Mr. Lismont intended to commence legal proceedings to correct inventorship *in the United States*.[6]  In fact, approximately six months after sending the letter, Mr. Lismont followed through on his threat to pursue further legal action by filing the Second German Litigation in December 2002.  Mr. Lismont has not pointed to anything in the record from which a fact-finder could conclude that Binzel-Germany expected further litigation after completion of the Second German Litigation, especially not in a forum other than Germany.

Mr. Lismont's request in Germany for "worldwide damages" does not alter this conclusion.  There are no assertions in the complaint filed in the Second German Litigation indicating that Mr. Lismont was pursuing the issue of inventorship as to the '406 patent.  More im-

---

[6]  It is also worth noting, at the time of this letter, the '406 patent had not yet issued.  Thus, at the time this letter was sent, there was not yet a United States patent to be litigated.

portantly, there are no assertions in the complaint that could serve to notify Binzel-Germany that this issue would eventually be litigated in the United States if left unresolved upon conclusion of the litigation abroad.

Thus, because the plaintiff did not provide any notice to the defendants in a foreign patent dispute that it would pursue litigation in the courts of the United States against the same defendants upon termination of the foreign litigation, it is not an abuse of discretion to find that laches bars the later claim.

CONCLUSION

For these reasons, we conclude that the district court correctly imposed the presumption of laches and properly determined that Mr. Lismont had not presented any genuine issues sufficient to rebut the presumption. We therefore hold that the district court did not abuse its discretion when it held Mr. Lismont's claim barred by laches.[7]

**AFFIRMED**

COSTS

No Costs.

---

[7]   In his reply brief, Mr. Lismont requested that we strike the portions of Appellees' brief discussing collateral estoppel. Because our decision does not turn on these contents, we deny Mr. Lismont's motion as moot.

## <u>CERTIFICATE OF SERVICE AND FILING</u>

I certify that I electronically filed the foregoing document using the Court's

CM/ECF filing system. Counsel was served via CM/ECF on March 14, 2016.

/s/ Frank P. Porcelli
Frank P. Porcelli